UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSE MACKENZIE,

        Plaintiff,

-against-

NATIONAL HARM REDUCTION
COALITION and DANIEL RAYMOND,

        Defendants.

Case No.:

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff ROSE MACKENZIE ("Plaintiff" or "Ms. MacKenzie"), by and through her attorneys, FISHER TAUBENFELD LLP, complains of NATIONAL HARM REDUCTION COALITION ("NHRC" or the "Company") and DANIEL RAYMOND ("Raymond") (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1. This action is brought to challenge Defendants' practice of gender discrimination and retaliation against Plaintiff, in violation of Title VII of the 1964 Civil Rights Act ("Title VII") and the Administrative Code of the City of New York, § 8-101 *et seq.* ("City Law").

2. Throughout Plaintiff's employment, Defendants subjected her to a hostile work environment based on her gender and retaliated against her for complaining about gender discrimination.

3. Defendants also constructively terminated Plaintiff's employment based on her gender and discrimination complaints.

1

## JURISDICTION AND VENUE

4. Jurisdiction of this Court is proper under 28 U.S.C. §1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States.

5. Supplemental jurisdiction over Plaintiff's City Law claims is conferred by 28 U.S.C. § 1367(a). Plaintiff was employed by Defendants in the City of New York.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) in that the Company maintains offices and conducts business in this district. Plaintiff was employed by Defendants in this district.

7. Plaintiff has satisfied all jurisdictional prerequisites under Title VII. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and on August 17, 2021 received a Notice of Right to Sue.

8. Pursuant to § 8-502(c) of City Law, within 10 days of filing this complaint with the Court, Plaintiff will serve a copy of this Complaint on the City of New York Commission on Human Rights and on the City of New York Corporation Counsel.

## PARTIES

### *Plaintiff*

9. Ms. MacKenzie is an adult individual who resides in the State of New York, County of Kings.

10. Defendants employed Ms. MacKenzie as Senior Director of Policy & Mobilization from November 2019 to August 3, 2020.

11. At all times during her employment with Defendants, Ms. MacKenzie was qualified for her position and carried out her job duties with diligence and care, meeting or exceeding performance expectations.

*Defendants*

12. Upon information and belief, NHRC is a national organization that acts as an advocate and ally for victims of drug abuse.

13. NHRC maintains a place of business located at 22 W 27th St, New York, NY 10001.

14. At all relevant times, NHRC has continuously been doing business in the City of New York and has continuously employed fifteen (15) or more employees, and accordingly is an "employer" within the definition of the Title VII and City Law.

15. Raymond was employed by NHRC and served as Director Deputy of Planning and Policy during Ms. MacKenzie's employment.

16. Raymond was an employer individually liable for discrimination against Ms. MacKenzie under City Law, given that he had power to do more than carry out personnel decisions made by others. At all relevant times hereto, Raymond supervised Plaintiff.

17. Raymond recommended, participated in, or carried out the adverse actions against Plaintiff and aided and abetted in the discriminatory and/or retaliatory acts against Plaintiff.

## FACTUAL ALLEGATIONS

18. On November 25th 2019, NHRC hired Ms. MacKenzie as a Senior Director of Policy & Mobilization.

19. In this capacity, Ms. MacKenzie was responsible for leading the Policy Department and expanding the Organization's advocacy and civic engagement work.

*Gender Discrimination Against Ms. MacKenzie*

20. Throughout Ms. MacKenzie's employment with Defendants, Raymond treated Ms. MacKenzie less favorably than her male colleagues.

21. Within the first few weeks of her employment, Raymond required Ms. MacKenzie to

complete administrative tasks that were not assigned to male employees. For example, Raymond requested that Ms. MacKenzie book his train ticket for a meeting in Washington, DC.

22. A member of the executive team informed Ms. MacKenzie that there had been a previous complaint of gender discrimination against Raymond and advised Ms. MacKenzie to stroke Raymond's ego if she wanted anything from him.

23. In December 2019, Ms. MacKenzie learned for the first time that a) her team needed to rebudget the Organization's policy grants, b) there were specific deliverables her team needed to meet, c) they had severely underspent on budgets, and d) they needed to take immediate action.

24. All of this information was necessary for Ms. MacKenzie to perform her job as the Senior Director of Policy and Mobilization, and she later learned that Executive Director Monique Tula had put all this information together for Ms. MacKenzie and given it to Raymond, who never passed it along to Ms. MacKenzie.

25. Approximately one month later, Ms. MacKenzie took over from Raymond supervision of Government Relations Manager Kiefer Patterson.

26. Raymond failed to tell her that this employee had been underperforming for over a year and had been subjected to written and verbal discipline, and that the executive team had decided to fire him but Raymond did not follow through with the firing.

27. Ms. MacKenzie began to have issues with Mr. Patterson and ultimately fired him.

28. Executive Director Tula told Ms. MacKenzie that to give her team a clean slate, the Organization had planned to terminate Mr. Patterson prior to Ms. MacKenzie's hiring and that she did not know why he was not fired.

29. At a conference in early March 2020, Ms. MacKenzie and Raymond delivered a presentation together.

30. Raymond directed Ms. MacKenzie to do all the work to outline and create the presentation.

31. Raymond then presented half the slides as though he and Ms. MacKenzie had created the presentation together.

32. At the same conference, another one of Raymond's direct reports, the Hepatitis C Training and Policy Manager, Michael Selick, gave a presentation entirely on his own.

33. Later that month, Raymond asked Ms. MacKenzie to take on the work that had been given to him by the Communications team, in additional to the work that was already assigned to her.

34. He informed her that Michael Selick, who was not as senior as her, is a subject matter expert to whom she could turn for help, but Raymond did not ask Mr. Selick to do the page review.

35. In April 2020, Ms. MacKenzie found out from the Communications Manager that Raymond was preparing a policy statement for the Organization without informing her.

36. In April 2020, Ms. MacKenzie was belatedly scheduled to have her 90-day performance review– 2 months late. Raymond canceled the first scheduled meeting and during the second meeting said that he failed to do the paperwork HR had sent him for the review.

37. Instead, he wanted to simply have a conversation and admitted that the ways in which Ms. MacKenzie struggled were his fault.

38. He further admitted that she had entered the organization with "one hand tied behind [her] back" and he committed to doing a better job of giving her the information and contacts she needed to be successful. However, he never followed through on this promise.

39. He also discussed gender dynamics in the organization by stating that he was thankful there are a lot of women and maintained that "there are no gendered power dynamics to contend with."

40. To Ms. MacKenzie's knowledge, there was no record of her review having been completed.

41. On May 19, 2020, Ms. MacKenzie and Raymond had a discussion in which Ms. MacKenzie presented to him the priorities for her team for the second half of the year.

42. During the conversation, Raymond asked many belittling questions about her work, and aggressively questioned the overall goals of her work, even though those were set by funding and the Organization's strategic priorities.

43. Ms. MacKenzie followed up the next day with an email stating that Mr. Raymond was demonstrating a lack of trust in her work and undermining her leadership based on gender.

44. She sent the email to HR as well.

45. Raymond responded that he had no concerns about her leadership or work and would reflect on the power dynamics at play.

46. The two had a conversation the next day where Raymond expressed that he had faith in her work and leadership, would attempt to change his behavior, and that he had noticed the ways that other male members of staff undermined her leadership but did not know how to support her in those moments.

47. On July 29, 2020, Ms. MacKenzie received an email from a colleague at another organization forwarding Raymond's request to him and several other individuals regarding legal rulemaking.

48. The colleague asked, "Daniel did loop you, the lawyer in the group, in on this *legal

rulemaking action*… right," underscoring the fact that Raymond excluded Ms. MacKenzie from conversations of which she should have been a part.

49. On August 3, 2020, Ms. MacKenzie was constructively terminated from her position when she could no longer tolerate Raymond's misogynistic conduct. She sent an email to the Organization resigning from her position based on Raymond's misogynistic conduct.

50. Ms. Tula told Ms. MacKenzie that she was not surprised to learn about these issues.

51. On August 11, 2020, Ms. MacKenzie filed a formal grievance with HR.

52. HR acknowledged receipt of the complaint and informed Ms. MacKenzie that a third party would be conducting an investigation.

53. In the next several weeks, Ms. MacKenzie spoke with several women who commiserated with her based on Raymond's sexist conduct and stated that they had discussed this conduct with HR, the Executive Director, and the Board in the past.

54. Ms. MacKenzie also spoke with the third-party investigator about her experience with Raymond.

55. In late September and early October 2020, Ms. MacKenzie followed up with the Organization to learn the outcome of the investigation.

56. She was informed that the investigation demonstrated that Raymond had, in fact, failed to onboard Ms. MacKenzie, engaged in gaslighting, undermined the leadership of women, and created an abusive/hostile work environment.

57. These findings had been shared with the staff before they were shared with Ms. MacKenzie.

58. Furthermore, Ms. Jones admitted that there was no proposal as to how Ms. MacKenzie would be compensated or made whole for the harm she had suffered.

## FIRST CAUSE OF ACTION

*Gender Discrimination Under Title VII*
*Against NHRC*

59. Plaintiff repeats and realleged all paragraphs above as though fully set forth herein.

60. Title VII makes it unlawful for an employer to "… discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's… gender…"

61. By the acts and practices described above, NHRC intentionally discriminated against Plaintiff based on her gender in violation of Title VII.

62. As a proximate result of NHRC's unlawful conduct, Plaintiff has suffered emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation, and substantial losses in past and future earnings and other fringe benefits.

## SECOND CAUSE OF ACTION

*Retaliation Under Title VII*
*Against NHRC*

63. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

64. By the acts and practices described above, NHRC retaliated against Plaintiff by creating a hostile work environment because she complained of gender discrimination, in violation of the Title VII.

65. Additionally, NHRC constructively terminated Plaintiff's employment in retaliation for her complaining of and rebuffing gender discrimination.

66. NHRC knew that its actions constituted retaliation and willfully disregarded Plaintiff's

statutorily protected rights.

67. As a proximate result of NHRC's unlawful conduct, Plaintiff has suffered emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation, and substantial losses in past and future earnings and other fringe benefits.

## THIRD CAUSE OF ACTION

### *Gender Discrimination Under City Law against Defendants*

68. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

69. City Law makes it unlawful for "an employer or an employee or agent thereof, because of the actual or perceived…. gender…. to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

70. By the acts and practices described above, Defendants intentionally and willfully discriminated against Plaintiff on the basis of her gender, in violation of City Law.

71. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation, and substantial losses in past and future earnings and other fringe benefits.

## FOURTH CAUSE OF ACTION

*Retaliation Under City Law*
*against Defendants*

72. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

73. By the acts and practices described above, Defendants created a hostile environment in retaliation for Plaintiff complaining of gender discrimination, in violation of the City Law.

74. Additionally, Defendants retaliated against Plaintiff by constructively terminating her employment because she complained of and rebuffed gender discrimination.

75. Defendants knew that their actions constituted retaliation and willfully disregarded Plaintiff's statutorily protected rights.

76. As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation, and substantial losses in past and future earnings and other fringe benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment awarding on Plaintiff's Causes of Action:

　　i. back pay, prejudgment interest, front pay, penalties, and damages for all employment benefits Plaintiff would have received but for the unlawful acts and practices of Defendants;

　　ii. compensatory damages;

　　iii. punitive damages;

iv. reasonable attorneys' fees and costs incurred in this action; and

v. any other relief that the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated: October 6, 2021
       New York, New York

                                      _____
                                      Liane Fisher, Esq.
                                      Michael Taubenfeld, Esq.
                                      FISHER TAUBENFELD LLP
                                      *Attorneys for Plaintiff*
                                      225 Broadway, Suite 1700
                                      New York, New York 10007
                                      (212) 571-0700